UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LEE OLIVER COUNTS, JR.                                                                      PLAINTIFF

v.                                         Civil No. 6:14-CV-06123-SOH-BAB

SHERIFF LARRY SANDERS,                                                                    DEFENDANTS
TRANSPORT OFFICER CUNNINGHAM,
CAPTAIN BRAINDSTETTER, NURSE M.
REEVES, and CHIEF DEPUTY M.
CHAMBERLAIN

## REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff, Lee Oliver Counts, pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment filed herein by separate Defendants Michelle Reeves, Ronald Branstetter,[1] Mark Chamberlain, and Larry Sanders.[2] ECF No. 26. A hearing was held on June 9, 2016, to allow the Plaintiff to give a sworn oral statement in response to the Motion.[3] ECF No. 37. After careful consideration of the briefing,

---

[1] Documents submitted by Defendants indicate Defendant Braindstetters' name is actually Branstetter.

[2] The summons for Defendant Cunningham was returned unexecuted on February 26, 2015, indicating Defendant Cunningham was no longer employed with Garland County, and service to the last known address was returned. ECF No. 13. Plaintiff provided no additional service address for Defendant Cunningham.

[3] As this was a sworn oral response to a Motion for Summary Judgment the Court did not allow cross examination of Plaintiff.

1

exhibits submitted, and sworn statement of the Plaintiff, the undersigned makes the following Report and Recommendation.

**1.     BACKGROUND**

Plaintiff's claims center on an automobile accident which occurred on September 15, 2014. ECF Nos. 1, p. 5; 28, p. 1. Plaintiff was being transported from the ADC Calico Rock facility to the Garland County Detention Center (GCDC) for a pending Garland County court appearance on September 16, 2014. Defendant Cunningham was the driver of the transport vehicle. ECF No. 28, p. 1. Plaintiff claims he was handcuffed in the vehicle and Defendant Cunningham was speeding, "doing at least eighty or ninety," when he hit the metal guard rail on a Greer's Ferry bridge. Plaintiff alleges he was denied medical care for approximately two and a half hours until they arrived in Garland County, Hot Springs rather than being taken a medical facility closer to the scene of the accident, such as Heber Springs. He alleges there were no deer present and he was not sleeping during that transport time because he was bleeding severely. ECF No. 1, p. 5.

Plaintiff proceeds against all Defendants in their official and personal capacities. ECF No. 1, p. 4. Plaintiff requests $125,000 from each Defendant for pain, suffering, and neglect. He seeks $75,000 punitive damages from each Defendant.

Defendants filed their Summary Judgment Motion on March 28, 2016. ECF No. 26. Plaintiff appeared in person to give a sworn statement in response to the Summary Judgment Motion on June 9, 2016. ECF No. 37. Prior to the hearing, Plaintiff indicated to the Court's *pro se* law clerk he was represented by attorney Robert Newcomb, and presented a business card. Mr. Newcomb was contacted by phone. He indicated he had spoken with Plaintiff, but no retainer had

been paid and no contract signed. He did not consider himself to be in an attorney-client relationship with Plaintiff.

Plaintiff filed a Response to the Motion for Summary Judgment on August 31, 2016. ECF No. 38. Defendant filed a Reply to the Response on September 9, 2016, requesting that the Court not consider Plaintiff's untimely Response. ECF No. 39.

At the hearing, the issue of representation was addressed with Plaintiff prior to administering the oath. He agreed he had not paid any fees to Robert Newcomb to represent him. The Court asked him if, as of today, right now, he did not have an attorney. Plaintiff stated he did not have an attorney.

Plaintiff testified as follows. He stated he was transported by Cunningham to Court on a breaking and entering charge. Cunningham was speeding, swerved, hit a guardrail, and swerved back onto the road. After the accident Plaintiff was bleeding and his shirt was bloody. He had abrasions on his head and his lip was cut wide open. These injuries occurred when he hit his head against the restraining bar. He told Cunningham he needed to go to the hospital, but Cunningham kept driving until they reached GCDC. He thought the accident took place near Heber Springs. He was almost passing out, he was in a state of shock. He had a knot on his head and asked continually for care during the trip.

When they reached GCDC, the administrator told Plaintiff he needed care. GCDC staff took witness statements and photographs, and then took his bloody shirt and washed it. They sent him to the hospital. Plaintiff stated he did not have copies of the witness statements. He had asked for copies of the statements and the photographs, but they never sent them.[4] He stated the ADC

---

[4] Plaintiff never specifically identified who he was referring to as "they" in this statement. However, based on the context of the statement, the Court will infer that Plaintiff is

Calico Rock facility had photographs of him as well.  At this point, Plaintiff added that his wrist was injured in the accident as well.

Plaintiff testified he saw the vehicle hit the guardrail.

Plaintiff testified he was sent to the hospital the night of the accident, September 15, 2014, after the witness statements were taken.  Plaintiff stated the hospital did not do anything.  He did not get stitches for his lip.  Another officer, not Cunningham, transported him to the hospital.  He did not see Defendant Sanders, Reeves, Chamberlain, or Branstetter that night or the next day.

Plaintiff was transported to court on September 16, 2014, and was then taken back to the ADC that same day.  He did not see Defendant Sanders on September 16, 2014.  However, he stated the officers knew Sanders was working.  The whole facility knew about the accident.  He was kept on medical watch while he was there.  He did not see Cunningham again after he arrived in GCDC.

Plaintiff testified he sued Sanders because Sanders was in charge, and officers are supposed to inform their superiors. Sanders knew what Cunningham had done and did not order more medical treatment for Plaintiff, sending him back to the ADC instead.  He never saw Nurse Reeves at all.

Plaintiff testified he sued Chamberlain because Chamberlain was in charge, and they could not have sent him back to the ADC without his authorization.  Plaintiff testified he sued Branstetter because he is the Captain of the deputies.

Plaintiff stated he thought the hospital had given him some medication, possibly pain medication.  He was not sure what kind of medication he was given.

---

referring to GCDC staff.

Plaintiff testified he did not receive medical treatment when he arrived back at the ADC on September 16, 2014. The ADC took photographs. He did not get stitches for his lip. Plaintiff stated he took some Tylenol for his head injury. He said the ADC told him the "hospital should have given me more or something."

Plaintiff testified he passed out on the way to the hospital, and an unknown nurse at St. Vincent's told him the reason was probably blood loss.

Plaintiff testified he did not have any physical injuries other than the head abrasion and a split lip. When asked about any other injuries, Plaintiff replied he could not work, so he was denied classification. He also said the ADC put him on a top bunk and he fell off. He said he needed to see a chiropractor for his neck at the ADC. He stated he got written up a lot because he could not work for three months.

Plaintiff confirmed the accident occurred near Greer's Ferry Bridge.

Defense counsel indicated at the hearing Defendants were not aware of any written statements or photographs at GCDC.

## 2.     LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the

nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**3.     DISCUSSION**

Defendants argue summary judgment in their favor is appropriate on the following grounds: (1) Plaintiff cannot show that a policy or custom of GCDC was the moving force behind any alleged constitutional violation, therefore dismissal of the official capacity claims are appropriate; (2) Plaintiff's claims against Defendants Sanders, Reeves, Chamberlain, and Branstetter are based solely on the doctrine of *respondeat superior*; (3) Plaintiff cannot show any deliberate indifference to his serious medical needs.  ECF No. 27, pp.  4-8.

**A.     Official Capacity Claims**

Plaintiff failed to state an official capacity claim against Garland County.  Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available.  *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).   Claims against individuals in their official capacities are

> equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

Plaintiff failed to provide any facts which indicated Garland County had any custom or policy which violated his constitutional rights. He therefore failed to provide any summary judgment evidence which could support claim against Garland County.

**B.  Delay or Denial of Medical Care - Defendants Sanders, Branstetter, Reeves, and Chamberlain**

Plaintiff's claims against Defendants Sanders, Branstetter, Reeves, and Chamberlain are based solely on the theory of *respondeat superior.*

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper*, 130 F.3d at 1314 ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability

7

of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)). In other words, Defendants cannot be held liable merely because they hold supervisory positions at the GCDC.

In his Complaint, Plaintiff did not mention Defendants Sanders, Branstetter, Reeves, and Chamberlain in his Statement of Claim or otherwise describe how they were personally involved with or responsible for his delay of medical care claim. Instead, he merely identified them by name and position at GCDC, permitting the inference that he sued them solely due to their supervisory positions at GCDC. Sanders was identified as the Sheriff of Garland County, Branstetter as a Captain, Nurse Reeves as a member of the medical staff, and Chamberlain as the Chief Deputy Administrator.

At the hearing, Plaintiff confirmed this inference. Plaintiff testified he did not see Defendant Sanders, Reeves, Chamberlain, or Branstetter on September 15, 2014, or September 16, 2014. Plaintiff testified he sued Sanders because Sanders was in charge, he knew what Cunningham had done and did not order more medical treatment for Plaintiff, and he sent him back to the ADC instead. Plaintiff testified he sued Chamberlain because Chamberlain was in charge, and they could not have sent him back to the ADC without his authorization. Plaintiff testified he sued Branstetter because he is the Captain of the deputies.

Based on his allegations and testimony, Plaintiff failed to identify any personal involvement with or direct responsibility for his alleged delay of medical care by any of these Defendants. Instead, he sued these individuals because of their supervisory positions at GCDC.

Plaintiff therefore failed to provide any summary judgment evidence which could support a claim against Defendant Sanders, Branstetter, Reeves,[5] and Chamberlain for this incident. Because there are no material facts in dispute, Defendants Sanders, Branstetter, Reeves, and Chamberlain are entitled to Summary Judgment in their favor. In view of this, the Court need not address the Defendants' other arguments in favor of summary judgment.

## 4.   CONCLUSION

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 26) be **GRANTED** and Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 30th day of January 2017.**

/s**/**  Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[5] To the extent it might be argued that Defendant Nurse Reeves, identified by Plaintiff only as a member of the medical staff, was not in a supervisory medical position, her role in in nonsupervisory position will be addressed as well. A claim of deliberate indifference to medical needs requires that the "prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)). Plaintiff testified he did not see Defendant Reeves while he was in GCDC. Plaintiff provided no allegation or testimony that she knew of his alleged medical conditions, other than to state that he was on medical watch after the accident. Because she did not know of Plaintiff's medical conditions, she was not deliberately indifferent to Plaintiff's medical needs.